JONAS UNDERWOOD *vs.* INHABITANTS OF SCITUATE.

The Rev. Sts. c. 46, § 18, have changed the provision of St. 1793, c. 59, § 13 ; and a person, though not an inhabitant of the town where a pauper falls into distress, may now recover of such town any expense necessarily incurred by him for the relief of the pauper, after notice and request made to the overseers of the poor of the town, and their neglect to provide for the pauper.

A physician, an inhabitant of the town of H., immediately after attending upon a person in the town of S., to whom he had been called, and who had received a wound and was a proper subject of relief by that town, gave notice to one of the overseers of the poor of said town that said person needed and would need surgical and medical assistance, but did not wish to be considered a pauper : He also requested said overseer to inform him whether the town of S. would pay him for the services which he had rendered and which it would be necessary to render : The overseers of the poor of S. took no order on this notice and request, and neglected to make any provision for said person : *Held*, that this notice and request were sufficient to entitle the physician to recover pay of the town of S. for his services in attending upon said person until he was cured.

ASSUMPSIT to recover pay for professional services.   The case was submitted to the court on the following statement of facts :

The plaintiff, who is a physician and surgeon, and an inhabitant of Hingham, was called upon, on the 25th of April 1842, to attend Freeman House, jr., a minor, who had been wounded by the bursting of a gun, and stood in need of immediate relief; and the plaintiff did attend him, from time to time, and administer to his relief and cure. Said House, on said 25th of April, was living in the town of Scituate, at the house of Freeman French, and was at said French's house during all the time of the plaintiff's attendance upon him. On or about said 25th of April, the plaintiff called at the house of one of the overseers of the poor of the town of Scituate, for the purpose of seeing said overseer; but he being absent, the plaintiff requested the wife and father of said overseer to inform him of the condition of said House, and that the plaintiff was attending upon him, and that he needed and would need medical and surgical assistance ; that he (said House) did not wish to be considered a pauper; and that the plaintiff desired to know whether the town of Scituate would remunerate him for such services as he had rendered, and for such services as it should be necessary for him to render. This notice, information and request, which were verbal, were communicated to said overseer, by his wife, on or about said day ; and within a week afterwards, the plaintiff made a similar communication to said overseer, who agreed to submit the matter to the board of overseers, and to inform the plaintiff, if said board should take any order thereon and conclude to become responsible. Said overseer reported the matter to said board, at their first subsequent meeting, and they declined to take any order on the subject ; but said overseer never informed the plaintiff of their refusal.

Said House was 17 or 18 years old, and had no means of support besides his labor, from which he was prevented by his wound ; and his father had not sufficient ability to maintain him : Nor was the plaintiff, nor any other individual, liable by law to support him. Said House's father had a legal settlement in the town of Pembroke, but he resided in Scituate : And the legal settlement of said House was also in Pembroke. Neither the said House nor his father had ever received any support from

the town of Scituate, and no application was made to the over-seers of the poor of said town, in the present case, except as above stated.

There were in the town of Scituate, when the plaintiff rendered the services aforesaid, several physicians of competent medical and surgical skill, some of whom lived as near to the house of the above mentioned French as the plaintiff; with all of whom the defendants had a special contract in relation to their services to the poor of the town, and which services were to be rendered under said contract, for a stipulated compensation. But there is no evidence that the plaintiff had knowledge of such contract.

Defendants to be defaulted, if the plaintiff is entitled to recover, and judgment to be entered for the plaintiff; otherwise, the plaintiff to become nonsuit.

*Kingsbury*, for the plaintiff.

*W. Baylies*, for the defendants.

DEWEY, J. It seems quite clear, that under the provisions of the statute in force before the enactment of the revised statutes, this action could not have been supported; the right to institute an action for supplies furnished to poor persons in need of relief, and where the overseers of the town refused or neglected to furnish the same, being restricted to persons who were inhabitants of the town against which the suit was brought. *Mitchell* v. *Cornville*, 12 Mass. 333. *Miller* v. *Somerset*, and *Kittredge* v. *Newbury*, 14 Mass. 396, 448. *Watson* v. *Cambridge*, 15 Mass. 286. Have the Rev. Sts. c. 46, § 18, changed the law on this subject? They have in terms. The former statute (*St.* 1793, c. 59, § 13,) restricted the right to recover for supplies thus furnished, to "an inhabitant" of the town within which such supplies were furnished. The revised statutes have substituted the words "any person," for the word "inhabitant" used in the former.

When we consider that the adjudications in the earlier cases were particularly placed upon the restriction or limitation of the persons entitled to this action, arising from the use of the term "inhabitant" in the statute; and when we perceive, in one of

the opinions giving a construction to the former statute, a suggestion that the provisions of the statute may be sometimes found too restricted for the humane objects contemplated by it; it seems to us that the occasion is not one to adopt a narrower construction of the revised statutes making the provision of law on this subject, than the words used, taking them in their ordinary acceptation, would naturally indicate. Giving the revised statutes such construction, they clearly extend to cases of expenses necessarily incurred for the relief of paupers, after due notice and request to the overseers of the poor, and neglect by them to furnish necessary supplies, by any person, as well one who is not an inhabitant, as one who is such. The only doubt that has rested upon our minds upon the subject has arisen from the fact, that the commissioners for revising the statutes have not, in the present instance, as they have usually done in similar cases, appended a note to the section, stating the alteration they have made in the provision, and suggesting to the legislature the reasons that should influence them to adopt such proposed alteration.

This fact doubtless furnishes some reason to suppose that no substantial alteration was intended, but is not sufficient to overbalance the evidence of such purpose, manifested in the change of language in the section itself; a change which must have been obvious to the minds of the commissioners, conversant as they were with the judicial decisions which had been made on the proper construction of *St.* 1793, *c.* 59, § 13, on this subject. We come therefore to the result, that a more enlarged provision, in cases of this kind, has been provided in the revised statutes.

The further inquiry is, whether, in the present case, the supplies were furnished for the relief of a pauper, and after due notice to the overseers of the poor of Scituate. That Freeman House, jr. was a person in need of relief, and a proper subject to receive aid from the overseers of the poor, is not denied by the defendants. But it was suggested, that the notice was not sufficiently explicit that the application for aid for House was to furnish the same to him as a pauper. It is true that the notice stated that House himself did not wish to be considered as

a pauper; but the facts stated in the notice fully show that it was a case where such relief was needed, and where it was the duty of the overseers of the poor to furnish the proper medical aid. Not having done so, the town became liable to the plaintiff, not upon the ground of an implied promise to pay him for his services in consequence of neglect to give him notice that they refused to employ him, or to recognize him as in their service, but by virtue of the direct statute provision creating such liability, after notice to the overseers, and their neglect to furnish the necessary supplies. Nor is it any sufficient answer, that there were resident in the town of Scituate, at the time the plaintiff rendered these services, several physicians and surgeons, of competent skill to have attended upon the pauper, or that the defendants had a special contract with those physicians and surgeons to render all such services as should be needed by paupers resident in the town. It was the duty of the overseers of the poor of Scituate to see that such services were actually rendered ; or at least an offer to render them should have been made. Had the plaintiff continued to administer to the pauper, after the tender of such medical and surgical aid from the persons thus contracted with by the town, he would have had no claim upon the town. It is only upon the ground that such medical and surgical aid was not offered nor provided by the overseers or their agent, that the right accrued to the plaintiff to furnish the same and to institute his action to recover therefor, as we think he may do upon the facts stated in the case.

*Judgment for the plaintiff*